**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Renea L. Barnes, | Case No. 23-cv-0939 (JRT/DLM) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Michael Segal, Warden, | |
| Respondent. | |

This matter is before the Court on Renea L. Barnes's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. (Doc. 1.) Ms. Barnes raises two claims for relief in her Petition. First, that the Federal Bureau of Prisons ("BOP") has wrongly found her to have a risk recidivism of Medium when, under the BOP's own system for evaluating the risk of recidivism, she has only a Low risk. Second, Ms. Barnes claims that she is entitled to credits based on the number of evidence-based recidivism reduction programs completed rather than length of time spent in programming. Ms. Barnes has also filed a document entitled Motion for Addendum to Case in which she appears to supplement her Petition with additional argument. (Doc. 15.) Ms. Barnes additionally filed an Addendum on September 25, 2023, requesting that the Court expedite its ruling on her Petition.[1] (Doc. 16.) The Petition, Motion, and Addendum come before this Court for review under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts,[2] and have been referred to the undersigned United States Magistrate Judge for a Report and

---

[1] Ms. Barnes has also filed a Reply to the Government's Response (Doc. 12) and a Letter/Addendum, (Doc. 14). In both filings, Ms. Barnes provides supplemental arguments in support of her Petition.

[2] Ms. Barnes does not bring her habeas petition pursuant to 28 U.S.C. § 2254. Nevertheless, the Court may apply the Rules Governing Section 2254 Cases to her Petition. *See* Rule 1(b).

Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons below, the Court recommends that Ms. Barnes's Petition (Doc. 1) be denied for lack of subject-matter jurisdiction, her Motion for Addendum to Case (Doc. 15) and Addendum for Expedited Ruling (Doc. 16) be denied as moot, and this action be dismissed.

## BACKGROUND

Renea Barnes is currently incarcerated at Federal Correctional Institution Waseca ("FCI Waseca"). She is serving a 48–month sentence with a five–year term of supervision for Conspiracy to Distribute a Controlled Substance (Methamphetamine) in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 846. (Doc. 10-1 at 2.) She has a projected release date of December 5, 2025, with good time credit. (*Id.*)

**I.   The First Step Act.**

Congress enacted the First Step Act ("FSA") in 2018, to reduce the federal prison population while also creating mechanisms for maintaining public safety by reducing recidivism risk. Congressional Research Service, *The First Step Act of 2018: An Overview*, 1 (2019), https://perma.cc/9JDZ-H6JH. Through the FSA, Congress directed the United States Attorney General to develop a risk and needs assessment system to determine the recidivism risk of each incarcerated person, their specific programing needs based on that assessed risk, and their classification according to their minimum, low, medium, or high risk for recidivism. 18 U.S.C. § 3632(a). The BOP uses the assessment system, called the PATTERN tool, to determine the type of evidence-based recidivism reduction ("EBRR") programming and productive activities ("PA") most

appropriate for each incarcerated person. *Id*. § 3632(a)(3), (5), (b). Along with determining the most appropriate EBRRs and PAs, Congress also created a system of "time credits" and other incentives to encourage participation in EBRRs and PAs. *Id*. § 3632(d).

**II.     PATTERN Score and FSA Time Credits.**

The BOP designed the PATTERN tool to assess both a person's risk of recidivism and their risk of violent or serious misconduct. *Id*. § 3632(a)(3). The tool assigns point values based on these characteristics: age (at first conviction and at time of assessment), disciplinary history, number of programs completed, technical or vocational courses, Federal Prison Industries, Inc. ("UNICOR") employment, drug treatment, and education, participation in the Inmate Financial Responsibility Program, sex-offender states (for men), criminal history score, history of violence, escape history, and education score. U.S. Dep't of Justice, *The First Step Act of 2018: Risk and Needs Assessment System*, 61–64 (2019), https://perma.cc/J7FH-5WKN; U.S. Dep't of Justice, *The First Step Act of 2018: Risk and Needs Assessment System – UPDATE* 9, 39–41 (2020), https://perma.cc/2ATT-QG8F.

The PATTERN tool assigns a person points, considering the factors listed above. (Doc. 10 ¶ 20.) Each recidivism risk level—minimum, low, medium, or high—is assigned a range of total points, and the range depends on a person's gender and whether they were convicted of a violent offense. *See The First Step Act of 2018: Risk and Needs Assessment System*, 66, Table 4. A person's PATTERN score is not set in stone, and the

3

BOP is required to periodically reassess a person's recidivism risk. 18 U.S.C. § 3632(a)(4).

Congress included incentives in the risk and needs system to encourage participation in a person's assigned EBRR programming and PAs. *See id.* § 3632(a), (d). Among these incentives are FSA "time credits" ("FTCs"). Under the FSA, eligible people who successfully complete their assigned EBRRs and PAs "shall earn 10 days of [FTCs] for every 30 days of successful participation in [EBRR] programming or [PAs]." *Id.* § 3632(d)(4)(A)(i). Additionally, a person whom the BOP determines to be at a minimum or low risk of recidivism, who does not increase their risk of recidivism over the course of two consecutive assessments, "shall earn an additional 5 days of [FTCs] for every 30 days of successful participation in [EBRR] programing or [PAs]." *Id.* § 3632(d)(4)(A)(ii).

FTCs "shall be applied toward time in pre-release custody or supervised release." *Id.* §§ 3632(d)(4)(c), 3624(g); 28 C.F.R. § 523.44(b)–(d). Pre-release custody includes either placement at a residential re-entry center ("RRC") or home confinement for the number of FTCs earned, *see* 18 U.S.C. 3624 (g)(2), and time limits on the length of pre-release placement are waived, *see id.* § 3624(g)(1). Under the FSA, if a person's sentence includes a period of supervised release, the BOP may transfer that person to begin their supervised release term at an earlier date not to exceed 12 months before their sentence ends. *Id.* § 3624(g)(3); 28 C.F.R. § 523.44(d).

The BOP may apply earned FTCs toward pre-release custody or early transfer to supervised release under 18 U.S.C. § 3624(g) only if an eligible person has: (1) earned FTCs in an amount that is equal to the remainder of their imposed term of imprisonment;

4

(2) shown a demonstrated recidivism risk reduction through periodic risk assessments or maintained a low or minimum recidivism risk; and (3) had the remainder of their term of imprisonment computed under applicable law. *Id.* § 3624(g)(A)–(C); *see also* 28 C.F.R. § 523.44(b).

As of December 8, 2022, Ms. Barnes is eligible to earn FTCs under 18 U.S.C. § 3632(d). (Doc. 10 ¶ 4; *id.* Ex. B.) On December 22, 2022, at Mr. Barnes's first PATTERN score determination, BOP staff determined she had a Medium PATTERN score. (Doc. 10 ¶ 5; *id.* Ex. C.) Then, on June 10, 2023, as part of her regular periodic reassessment, she was reassessed as having a Low PATTERN score. (Doc. 10 ¶ 5.) As of May 27, 2023, Ms. Barnes has earned 50 days of FSA time credits toward early release and 0 days of time credits toward a pre-release placement in a RRC or on home confinement.[3] (Doc. 10 ¶ 11; *id.* Ex. F.)

## ANALYSIS

In her Petition, Ms. Barnes asserts that she is not receiving her FTCs and they are not being applied correctly to reduce her sentence under 18 U.S.C.§ 3632. She asks the Court to direct the BOP to "correctly" apply her FSA time credits to reduce the length of her sentence. (Doc. 1 at 7.) She contends that because she was assessed as having a Low PATTERN score, she is "entitled to an additional 5 days for every 30 days of participation in EBRR classes/programs or productive activities." (*Id*. at 6.) According to Ms. Barnes the "BOP has failed to maintain its statutory duty under 18 U.S.C. [§] 3632,"

---

[3] It is not clear whether Ms. Barnes has earned additional days of FSA time credits since May 2023, but this does not affect the Court's recommendation regarding her Petition.

because she has "not been provided [her] earned time credits." (*Id*. at 7.) In response, the BOP argues that the Court should deny Ms. Barnes's Petition because her custody does not violate the United States Constitution or any federal statutes.

**I.     To the extent Ms. Barnes seeks early pre-release custody, this is not a cognizable habeas claim.**

"A district court may grant a writ of habeas corpus only if the petitioner 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Blocher v. Eischen*, No. 22-cv-678 (PJS/DTS), 2022 WL 1740649, at *3 (D. Minn. Nov. 3, 2022) (quoting 28 U.S.C. § 2241(c)(3)), *R. & R. adopted*, 2022 WL 17404447 (D. Minn. Dec. 2, 2022). A habeas petitioner, such as Ms. Barnes, may challenge only the fact or duration of their confinement. *Spencer v. Haynes*, 774 F.3d 467 (8th Cir. 2014); *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam). But if a person is not challenging either the fact or the duration of confinement, habeas is not the proper remedy, and the court lacks jurisdiction over the matter. *Johnson v. Birkholz*, No. 21-cv-2017 (PJS/LIB), 2022 WL 3135304, at *1 (D. Minn. Aug. 5, 2022) (citing *Spencer*, 774 F.3d at 469–71; *Kruger*, 77 F.3d at 1073). The question from the start is whether Ms. Barnes has a claim for which habeas relief is available. *Blocher*, 2022 WL 17406549, at *3; *see also Kruger*, 77 F.3d at 1073 ("The [petitioner's] label cannot be controlling.") (citation omitted).

To the extent that Ms. Barnes asserts that FSA credits should be applied toward her pre-release custody date, such a claim does not attack the legality of her detention, only the place of her detention. Pre-release custody means placement in either home

6

confinement or an RRC. 18 U.S.C. § 3624(g)(2)(A)–(B). But a habeas petitioner may challenge only the fact or duration of her confinement, not the place of her confinement. *Milch v. Segal*, No. 23-cv-838 (NEB/LIB), 2023 WL 6626591, at *2 (D. Minn. June 15, 2023) (citing *Spencer*, 774 F.3d 467 (further citations omitted)), *R. & R. adopted*, 2023 WL 6623707 (D. Minn. Oct. 11, 2023).

Federal Courts consider claims seeking as relief placement in home confinement or at an RRC as claims challenging the *place* of confinement. *See United States v. Houck*, 2 F.4th 1082, 1085 (8th Cir. 2021) (discussing home confinement as a place of confinement); *see also Williams v. Birkholz*, No. 20-cv-2190 (ECT/LIB), 2021 WL 4155614, at *6 (D. Minn. July 20, 2021) ("A prisoner is transferred to home confinement not released to home confinement because home confinement is a place of incarceration.") (citation omitted), *R. & R. adopted*, 2021 WL 4155013 (D. Minn. Sept. 13, 2021). Thus, if Ms. Barnes is seeking early halfway house or home confinement placement, this is a challenge to a condition of her confinement, not her initial conviction or the length of her continued confinement. *See Pollock v. Kallis*, No. 20-cv-0359 (DSD/BRT), 2021 WL 3476627, at *4 (D. Minn. Apr. 6, 2021), *R. & R. adopted*, 2021 WL 2710013 (D. Minn. July 1, 2021), *aff'd sub nom. Pollock v. Marske*, No. 21-2570, 2022 WL 1218640 (8th Cir. Apr. 26, 2022) (per curiam). Habeas is not the proper remedy for such claims. *Johnson,* 2022 WL 3135304, at *1.

Even if Ms. Barnes could challenge the condition of her confinement in a habeas petition, "[t]he BOP has the exclusive authority to designate where [a person] will serve [their] sentence." *Blocher*, 2022 WL 17406549, at *3 (citing 18 U.S.C. § 3621(b)). Under

7

18 U.S.C. § 3621(b), the BOP "shall designate the place of the [person's] imprisonment" considering, among other things, "the history and characteristics of the [person]." Section 3621(b) states that "[n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." 18 U.S.C. § 3621(b); *see also United States v. Vang*, No. 16-cr-0277 (DWF/KMM), 2020 WL 4704875, at *2 (D. Minn. Aug. 13, 2020) ("Courts have consistently held that placement questions are not reviewable.") (citing 18 U.S.C. § 3621(b)) (collecting cases); *United States v. Murchison*, 865 F.3d 23, 28 n.8 (1st Cir. 2017) ("Determinations as to classification of [people] and eligibility to participate in certain programs are left to the BOP, not the courts.") (citations omitted). Thus, the BOP's placement decisions— including whether and when Ms. Barnes is transferred to pre-release custody—are not subject to judicial review, providing an additional basis for the Court's recommendation that her Petition be denied.

**II. The Court lacks subject-matter jurisdiction over the BOP's determination of Ms. Barnes's PATTERN score.**

As discussed above, in 18 U.S.C. § 3632, Congress directs the BOP to develop and publicly release a risk and needs assessment system as a classification tool. 18 U.S.C. § 3632(a). The Eighth Circuit has held that district courts lack jurisdiction over habeas petitions challenging BOP custody classifications. *Pollock v. Marske*, 2022 WL 1218640, at *1 (8th Cir. Apr. 26, 2022); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) ("[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison . . . [t]he same is true of prisoner

8

classification and eligibility for rehabilitative programs in the federal system."); *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . . and is not otherwise violative of the Constitution.'") (citation omitted); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (holding that "a prison inmate does not have a protectable liberty or property interest in her custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation") (citing *Wilson v. Budney*, 976 F.2d 957 (5th Cir. 1992)). As a result, Ms. Barnes has no constitutionally protected liberty interest in her PATTERN score calculation. *Prince v. Fikes*, No. 21-cv-0643 (MJD/BRT), 2021 WL 2942311, at *3 (D. Minn. June 16, 2021) (rejecting argument petitioner entitled to time credits claimed because federal prisoners have no right to a particular security or custody classification) *R. & R. adopted*, 2021 WL 2936656 (D. Minn. July 13, 2021). Accordingly, Ms. Barnes's Petition fails for this reason as well.

### III.   Separately, this matter is not ripe because Ms. Barnes is currently ineligible for application of earned FTCs toward pre-release custody or supervised release.

Ms. Barnes claims that the BOP has wrongly found her to have a Medium PATTERN score, when according to her, she has been assigned a Low PATTERN score. The BOP explains in its Response that while Ms. Barnes was determined to have a Medium PATTERN score in December, 2022, she was reassessed on June 10, 2023 (consistent with the BOP's obligation to conduct periodic reassessments), and was assigned a Low PATTERN score. (Doc. 10 ¶ 5; *id.*, Ex. C.) Ms. Barnes's complaint, thus, involves the 6-month period between her December, 2022 assessment and her June 10, 2023 reassessment. Regardless, she has no claim to review because Ms. Barnes is still currently ineligible to have earned FTCs applied to her sentence.

Ms. Barnes is eligible to *earn* FTCs under 18 U.S.C. § 3632(d) because the offense she was convicted of is not listed as a disqualifying offense under § 3632(d)(4)(D). (Doc. 10 ¶ 5; *id.* Ex. B; *see* § 3632(d)(4)(D).)  But despite her eligibility to earn credits, she is currently ineligible for *application* of earned FTCs toward pre-release custody for two reasons.

First, Ms. Barnes is currently ineligible to apply her FTCs to her sentence because her earned time credits do yet equal the number of days remaining on her sentence. The FSA provides that a person is eligible to have time credits applied toward supervised release or pre-release custody only when they have earned time credits "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." 18 U.S.C. § 3624(g)(1)(A). As of May 27, 2023, Mr. Barnes has earned only 50 days of time

10

credits. Her projected release date is not until December 5, 2025. Therefore, a habeas petition requesting application of FSA time credits is premature because she has not yet earned enough time credits to equal the remainder of her term of imprisonment. *Moore v. Rardin*, No. 22-cv-2476 (NEB/TNL), 2022 WL 18542331, at *6 (D. Minn. Dec. 1, 2022) ("Because Petitioner's earned time credits (690 days) do not yet equal the remainder of his sentence (approximately 898 days), the Court agrees with Respondent that it would be premature 'to direct the BOP to adjudicate the credits at this time.'"), *R. & R. adopted*, 2023 WL 1451560 (D. Minn. Feb. 1, 2023).

Second, Ms. Barnes is ineligible to apply her earned FTCs to her sentence because she has not yet maintained a Low or Minimum PATTERN score over the course of two risk assessments. To be eligible to apply FTCs toward pre-release custody or supervised release, 18 U.S.C. 3624(g)(1)(B) requires that a person show "through [their] periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the [person's] term of imprisonment." Under 18 U.S.C. 3624(g)(1)(D)(i), a person is further required to have been determined "to be a minimum or low risk to recidivate pursuant to the last 2 reassessments" or have "a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison." 18 U.S.C. § 3624(g)(1)(D)(i)(I)–(II). Ms. Barnes does not satisfy either of these requirements. Although she is currently assigned a Low PATTERN score, during her previous assessment, she was assigned a Medium PATTERN score. Furthermore, Ms. Barnes has not received transfer approval from the Warden. Therefore, notwithstanding its lack of subject-matter jurisdiction, the Court finds that Ms. Barnes's

11

ineligibility to apply FTCs toward pre-release custody or supervised release renders this matter not ripe.

## IV. Ms. Barnes's claim regarding the calculation of her FTCs is incorrect.

Finally, the Court addresses Ms. Barnes's claim that she is entitled to FSA time credits based on the number of EBRR programs she has completed rather than the length of time she has spent in programming.

Under the FSA,

> [a] prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:
>
> > (i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
> >
> > (ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

*Id.* § 3632(d)(4)(A).

According to Ms. Barnes's interpretation of the statute, at the time that she filed her Petition, she had accrued "1,350 programing days of 'earned time credits'" based on the number of individual programs she attended equaling "675 days off of [her] sentence." (Doc. 1-2 at 2.) The BOP, by contrast, interprets the FSA as requiring credits to be awarded based on days spent in programing, not based on the number of individual programs attended. *See* 28 C.F.R. § 523.42(c)(1) ("For every thirty-day period that an

eligible inmate successfully participates in EBRR Programs or PAs recommended based on the inmate's risk and needs assessment, the inmate will earn ten days of FSA Time Credits.").

Ms. Barnes is one of many people in BOP custody recently to challenge the BOP's interpretation of the FSA. But her interpretation of the FSA has been repeatedly rejected by courts both in and outside of this District. *See, e.g.*, *Pospech v. Segal*, No. 23-cv-1122 (PJS/DLM), 2023 WL 4275134, at *1 (D. Minn. May 9, 2023) (collecting cases), *R. & R. adopted*, 2023 WL 4274759 (D. Minn. June 29, 2023). The Court agrees with the analysis found in those cases. Section 3632(d)(4)(A) does not require the BOP to award credits for each *program* completed. Instead, incarcerated individuals "shall earn . . . time credits for every 30 days of successful participation in evidence-based recidivism reduction programming." 18 U.S.C. § 3632(d)(4)(A)(i). A person who participates in one program or many programs simultaneously is equally "participati[ng] in evidence-based recidivism reduction programming," *id.*, and is equally eligible to receive the same amount of time credits. "Congress made clear that a [person] earns First Step Act Time Credits based on the number of days in which they participate in eligible programs, not the number of eligible programs in which they participate." *Dale v. Hawkins*, No. H-22-3224, 2023 WL 2601215, at *5 (S.D. Tex. Mar. 22, 2023). If Ms. Barnes' interpretation were correct, she could earn years of FSA time credits based off a few months of program participation, provided she was in enough programs. The language of the FSA, as well as the regulations interpreting the Act, counsel otherwise.

This Court does not believe the FSA to be ambiguous in this regard. Likewise, the BOP has interpreted § 3632(d)(4)(A) consistent with the reading put forward above—prisoners are awarded credits based on days spent in programming, not based on number of programs attended. *See* 28 C.F.R. § 523.42(c)(1). The Court therefore concludes that Ms. Barnes is not entitled to habeas corpus relief and recommends that her habeas petition be denied.

V. **Ms. Barnes's Motion for Addendum to Case and Addendum Requesting Expedited Relief.**

Because the Court recommends denial of the Ms. Barnes's Petition, the Court also recommends denial of her Motion for Addendum to Case (Doc. 15) and her Addendum Requesting Expedited Relief, (Doc. 16).

VI. **An Evidentiary Hearing is Not Necessary.**

Finding that Ms. Barnes's Petition fails to state a claim that, even if true, would be cognizable in a federal habeas corpus proceeding, the Court determines that an evidentiary hearing is not necessary. *Edgemon v. Lockhart*, 768 F.2d 252, 255 (8th Cir. 1985) (citation omitted).

## SUMMARY FOR PRO SE PARTIES

This Court is recommending that Ms. Barnes's habeas petition be denied because the Court does not have subject-matter jurisdiction over the case, meaning that the Court does not have the power to decide the issues Ms. Barnes raises in the way that she raises them. This Court could decide Ms. Barnes's habeas petition if she were claiming that her sentence was illegal, but that's not the issue Ms. Barnes raises. Instead, Ms. Barnes asks

the Court to order the BOP to recalculate the number of FTCs she has earned and immediately apply her earned FTCs to her sentence. Even if the Court had the power to review Ms. Barnes's petition as it's written, the Court does not have the power to order the BOP to recalculate her FTCs and immediately apply them to her sentence. Finally, the Court explains that the way Ms. Barnes has interpreted 18 U.S.C. § 3632(d)(4)(A) is incorrect, and it does not require the BOP to calculate her FTCs based on the number of EBRR programs she has completed.

## RECOMMENDATION

Accordingly, based on all the above files, records, and proceedings in this action,

**IT IS RECOMMENDED** that:

1. Petitioner Renea Barnes's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1) be **DENIED** for lack of subject-matter jurisdiction;

2. Ms. Barnes's Motion for Addendum to Case (Doc. 15) be **DENIED AS MOOT**; and

3. Ms. Barnes's Addendum Requesting Expedited Relief (Doc. 16) be **DENIED AS MOOT**; and

4. This matter be **DISMISSED WITHOUT PREJUDICE**.

Date: January 16, 2024           *s/Douglas L. Micko*
         DOUGLAS L. MICKO
         United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written

objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).